IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVIDA FRITCHMAN | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 08-2559 |
| NORFOLK SOUTHERN RAILWAY CO. | : | |
| and NORFOLK SOUTHERN CORP. | : | |

**SURRICK, J.**                                                                                                   **MARCH  17 , 2009**

## MEMORANDUM & ORDER

Presently before the Court are Defendants' Notice of Removal (Doc. No. 1) and Plaintiff's Motion in Opposition to Defendants' Notice of Removal (Doc. No. 2).  For the following reasons, the case will be remanded.

**I.      BACKGROUND**

Davida Fritchman ("Plaintiff") was a full-time jitney van driver employed by Professional Transportation, Inc. ("PTI").  (Compl. ¶ 9.)  Plaintiff's job was to drive employees of Norfolk Southern Railway Company and Norfolk Southern Corporation ("Defendants") around the Morrisville Rail Yard in East Langhorne, Pennsylvania.  (*Id.*)  At approximately 4:00 a.m. on October 7, 2007, Plaintiff picked up one of Defendants' freight conductors at the southwest end of the rail yard.  (*Id.* ¶ 13.)  The conductor told Plaintiff to drive along the north side of the rail yard so that he could attend to some switches.  (*Id.*)  After that, the conductor told Plaintiff to take him to a clearance point on another track and directed her to wait there until a train passed.  The conductor put a handbrake on one of the trains at the clearance point and then told Plaintiff to take him to another point on the track where he could "cut some cars."  (*Id.*)  After cutting the cars, the conductor directed Plaintiff to drive him to a different track where he could throw a switch.  The conductor threw the switch and returned to the van, instructing

Plaintiff to "drive down [another] side of the yard to the clearance point on [the] track and to wait there in the van with him until the train was in the clear." (*Id.*) He told Plaintiff to "drive him up toward the head end of the train so [that] he could apply handbrakes." (*Id.*) As Plaintiff was driving the conductor toward the head end of the train so that he could apply the handbrakes, Plaintiff's van collided with a parked trailer. (*Id.* ¶ 20.) Plaintiff's left arm was severed just below the shoulder as a result of the collision. Plaintiff's left arm ultimately had to be amputated. (*Id.* ¶¶ 20, 26.)

On April 9, 2008, Plaintiff filed a two-count complaint in the Court of Common Pleas of Philadelphia County asserting claims against Defendants under the Federal Employers Liability Act ("FELA") and common law negligence. (*See* Compl. ¶¶ 16-18, 65.) On June 2, 2008, Defendants filed a Notice of Removal. (*See* Doc. No. 1.) Defendants contend that removal is proper under 28 U.S.C. § 1332 as there is complete diversity of citizenship and the amount in controversy exceeds $75,000.00, exclusive of interest and costs. (*Id.* ¶ 4.) Plaintiff filed a "Motion in Opposition to Defendants' Notice of Removal." (Doc. No. 2.) Plaintiff contends that removal is improper since an "FELA case filed in state court may not be removed to federal court," and that the case should be remanded to state court. (*Id.* ¶ 6.)

## II.  LEGAL STANDARDS

### A.  The FELA

The FELA "was passed in 1908 in an effort to provide a tort compensation system for railroad workers who, at that time, experienced among the highest accident rates in United States history." *Hines v. Consol. Rail Corp.*, 926 F.2d 262, 267 (3d Cir. 1991) (citation omitted). The FELA requires the plaintiff to prove four elements: (1) the defendant is a common carrier by

railroad engaged in interstate commerce; (2) the plaintiff was employed by the defendant and assigned to perform duties which furthered such commerce; (3) the plaintiff's injuries were sustained while the plaintiff was employed by the common carrier; and (4) the injuries resulted from the defendant's negligence. *Felton v. SEPTA*, 952 F.2d 59, 63 (3d Cir. 1991). The FELA accords a cause of action to individuals employed directly by a railroad as well as to individuals who serve as (1) a borrowed servant; (2) a dual servant; or (3) a subservant of the railroad. *See Kelley v. S. Pac. Co.*, 419 U.S. 318, 324 (1974) (citing three ways in which a plaintiff can establish "employment" with a railroad). "The primary factor to be considered in determining whether a plaintiff was employed by the defendant [under the FELA] is whether the latter had the power to direct, control and supervise the plaintiff in the performance of his work at the time he was injured." *Williamson v. Consol. Rail Corp.*, 926 F.2d 1344, 1350 (3d Cir. 1991), *rehr'g en banc denied*, (3d Cir. 1991) (*citing Tarboro v. Reading Co.*, 396 F.2d 941, 943 (3d Cir. 1968)).

In *Williamson*, the Third Circuit emphasized that "the control factor" is determinative of employment status under the FELA. *Id.* at 1350; *see also id.* at 1354 (Nygaard, J., dissenting) ("The issue is quite simple: Did [the railroad] have the right to control [the plaintiff] on the job during which he was injured?"). The plaintiff in *Williamson* was an employee of a railroad's wholly-owned subsidiary who loaded and unloaded trailers from trains. The railroad had contracted with the subsidiary to handle the loading and unloading of trains at the terminal. *Id.* at 1347. The plaintiff was using a forklift to transfer cargo from one trailer to another when the trailer collapsed while the plaintiff was inside of it, causing injury. The plaintiff sued the railroad under the FELA. At the time of the accident, the plaintiff was on the payroll of the

subsidiary, not the railroad. However, the railroad and the subsidiary had "a close relationship" in which the railroad's employees "sometimes gave direction to [the subsidiary's] employees." *Id.* at 1351. The subsidiary shared office space with the railroad, and railroad clerks had the power to assign work to the subsidiary's employees and to change assignments given them by their supervisors. *Id.* at 1350. On the day in question, the railroad had an inspector present to monitor the plaintiff's work. The plaintiff testified that he considered himself under the control and direction of the railroad's inspector. The railroad's inspector told the plaintiff "when to stop the cargo transfer, when to resume it and how to place the cargo in the replacement trailer." *Id.* at 1347. The inspector selected the trailer into which the plaintiff was directed to transfer cargo. The Third Circuit found that there was sufficient evidence "that [the railroad] directly controlled [the plaintiff's] activities when he was injured," and thus a reasonable jury could "infer that [the plaintiff] was either [the railroad's] borrowed servant or a dual servant of [the subsidiary] and [the railroad] when he was injured." *Id.* at 1352. The court noted that "[t]he law does not require that the railroad have full supervisory control." *Id.* (*quoting Lindsey v. Louisville & Nashville R.R. Co.*, 775 F.2d 1322, 1324 (5th Cir. 1985)). "It requires only that the railroad, through its employees, plays a significant supervisory role as to the work of the injured employee." *Id.* (citations and internal quotations omitted); *see also Williams v. CSX Transp., Inc.*, No. 01-3433, 2002 WL 31618455, at *4 (E.D. Pa. Nov. 15, 2002) (finding genuine issue of material fact as to whether railroad had right to control the plaintiff for FELA liability where the defendant "played a supervisory role to [the plaintiff] while she was working in the [rail yard]" by speaking with employees on a daily basis, conducting safety meetings, providing tools, and inspecting work). Thus, the court reinstated a jury verdict in favor of the plaintiff. *See*

*Williamson*, 926 F.2d at 1354.

    **B.**    **Removal**

Removal is the procedure by which defendants who are brought before a state tribunal on claims otherwise within the scope of federal jurisdiction may compel transfer of the case to federal court. *See* 28 U.S.C. § 1441(a). A plaintiff may challenge removal through a motion to remand. *See id.* § 1447(c). The question presented on a motion to remand is whether the case as pending in the state court is removable. *See id.* §§ 1441(a), 1446. An action under the FELA filed in state court is not removable. *See* 28 U.S.C. § 1445(a) ("A civil action in any State court against a railroad . . . , arising under [the FELA], may not be removed to any district court of the United States."). Removal statutes "are to be strictly construed against removal and all doubts should be resolved in favor of remand." *In re Briscoe*, 448 F.3d 201, 217 (3d Cir. 2006) (*citing Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851 (3d Cir. 1992)); *see also Boyer v. Snap-On Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990) (internal quotations omitted) (noting same). "Ruling on whether an action should be remanded to the state court from which it was removed, the district court must focus on the plaintiff's complaint at the time the petition for removal was filed" and "must assume as true all factual allegations of the complaint." *Steel Valley Auth. v. Union Switch & Signal Div.*, 809 F.2d 1006, 1010 (3d Cir. 1987) (*citing Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 29 (3d Cir. 1985)); *see also Parlin v. DynCorp Int'l, Inc.*, 579 F. Supp. 2d 629, 632 (D. Del. 2008) (noting same).

**III.**    **DISCUSSION**

The issue in this case is whether Defendants may remove Plaintiff's FELA action notwithstanding the statutory provision that bars removal. Defendants agree that Plaintiff

presents "a non-removable claim under the FELA." (Doc. No. 1 ¶ 7.) Defendants nevertheless ask us to "take the . . . approach used by federal courts when dealing with the issue of fraudulent joinder of a non-diverse party which destroys diversity jurisdiction" to find that there exists "no reasonable possibility" that Plaintiff's FELA claim will prevail, thereby justifying dismissal of the FELA claim and allowing us "to continue to retain jurisdiction on diversity grounds." (Doc. No. 1 ¶ 10.)

Specifically, Defendants ask us to follow the approach taken by the court in *Toney v. Lowery Woodyards & Employer's Ins. of Wausau*, 278 F. Supp. 2d 786, 790 (S.D. Miss. 2003). In *Toney*, the plaintiff brought an action in state court against his former employer and insurer seeking damages for their alleged bad faith refusal to pay workers' compensation benefits. The insurer removed the action based on diversity, and the plaintiff filed a motion to remand. The plaintiff's employer was non-diverse, sharing the same citizenship as the plaintiff. The employer offered an unrefuted affidavit establishing that it had no active role in handling or adjusting the underlying workers' compensation claim. *Id.* at 791. Based on this undisputed evidence, the court concluded that the plaintiff had no viable basis for recovery against the employer and thus dismissed the non-diverse defendant and denied a motion to remand the case. *Id.* at 794.

Defendants here would like us to "pierce the pleadings" and consider "summary judgment type evidence which speaks to the issue of whether Defendants exercised the requisite level / degree of control over Plaintiff to render her an employee under the FELA." (Doc. No. 1 ¶ 10.) Defendants "request that this Court retain jurisdiction . . . and allow for reasonable time for the parties to conduct discovery regarding the issue of whether Norfolk Southern exercised the requisite level / degree of control over Plaintiff to render her an employee under the

[FELA]." (*Id.* ¶ 12.) "At the close of the court-ordered discovery period," Defendants ask us to "issue a briefing schedule for the filing of motions for summary judgment regarding Plaintiff's FELA claims." (*Id.*)

There is no basis in fact or in law for Defendants' removal here. The statute clearly provides that "[a] civil action in any State court against a railroad . . . , arising under [the FELA], may not be removed to any district court of the United States." 28 U.S.C. § 1445(a). The instant case falls squarely within the statute. Defendants would have us except the instant case from the statute, permit discovery, and then allow Defendants to file a summary judgment motion on Plaintiff's FELA claim. Apparently, Defendants' position is that we can assume jurisdiction now and justify it later, once discovery shows that Plaintiff's FELA claim fails. (*See* Doc. No. 1 ¶ 11 ("If this Court finds that Plaintiff cannot, as a matter of law, prevail on her FELA claims, then the dismissal thereof would allow this Court to continue to retain jurisdiction on diversity grounds.").) It is far from certain that discovery will show that Plaintiff's FELA claim fails. In any event, we will not assume jurisdiction where clearly none exists.

This is not a case where Plaintiff's inclusion of an FELA claim appears to be fraudulent. Nor is this a case where there exists "no reasonable possibility" that Plaintiff's FELA claim will prevail. Even though PTI hired Plaintiff and paid her, Plaintiff's Complaint sets forth detailed factual averments that establish Defendants' control over her activities during the course of her employment at the Morrisville Rail Yard and at the time of the accident. The Complaint alleges that immediately before the accident, Defendants' agent controlled Plaintiff's movements by "telling her where he wanted her to drive him." (Compl. ¶ 13.) Indeed, the Complaint recites a litany of specific instructions that Defendants directed at Plaintiff in the moments before the

accident. For example, Defendants' conductor told Plaintiff to drive along the north side of the rail yard and then drive to a clearance point on another track. The conductor directed Plaintiff to wait there, and then told her to drive to another point on the track. The conductor then directed Plaintiff to drive to a different track and thereafter instructed her to "drive down [another] side of the yard to the clearance point on [the] track and to wait there in the van with him until the train was in the clear." (*Id.*) He told Plaintiff to "drive him up toward the head end of the train so [that] he could apply handbrakes," and while Plaintiff was complying with this instruction, the accident occurred.

The Complaint also alleges facts showing that Defendants' control was not limited to this single occurrence. The Complaint alleges that:

(a) [Plaintiff's] movements in driving [Defendants'] employees around the Morrisville Rail Yard were controlled by [Defendants,] not PTI;

(b) [Plaintiff's] supervisor in picking up [Defendants'] employees was [Defendants'] Yardmaster, who ran things from his office at the Abrams Yard in King of Prussia, and communicated with the other jitney drivers by radio;

(c) If a train was late or [Plaintiff] had a question about when a particular train was coming into the yard, she would call [Defendants'] Yardmaster. She would not call PTI;

(d) There was no PTI supervisor on duty at the Morrisville Rail Yard;

(e) There was no PTI office at the Morrisville Rail Yard. PTI had no yard offices, but only had a district office, located in South Philadelphia;

(f) [Plaintiff] would communicate with her PTI district supervisor only about once a month;

(g) PTI had no involvement at all in [Plaintiff's] day-to-day driving of [Defendants'] employees;

(h) PTI did not act as an intermediary between [Plaintiff] and the instructions she received from [Defendants]. PTI did not have to approve the directions given to [Plaintiff] by [Defendants];

(i) Once [Plaintiff] picked up [one of Defendants'] conductor[s], she came under the director supervision of that conductor. She would drive the conductor to whatever parts of the yard he would instruct her to go so that he could throw railroad switches and handbrakes and make up his train[.]

(Compl. ¶ 13.)

Moreover, Plaintiff filed an affidavit in opposition to Defendants' removal that restates many of the allegations in her Complaint. The affidavit states that "[Plaintiff's] movements in driving Norfolk Southern employees around the . . . Rail Yard were controlled by Norfolk Southern, not by [her employer]." (Pl.'s Aff. ¶ 5.) The affidavit further states that Plaintiff "came under the direct supervision of [Defendants'] conductor" and "rarely" heard from her employer's district supervisor. (*Id.* ¶¶ 6, 11.) The affidavit supports the allegations in the Complaint that in the moments before the accident, Plaintiff was acting on instructions from Defendants' conductor. (*See id.* ¶ 8.)

This is not a case like *Toney* where the defendant has offered an unrefuted affidavit. Indeed, it is Plaintiff – not Defendants – who has offered an unrefuted affidavit that speaks precisely to the issue of Plaintiff's employment status under the FELA. Defendants have not proffered a basis for excepting the instant case from the statutory prohibition on removal of FELA cases. *See* 28 U.S.C. § 1445(a). Accepting as true the allegations in Plaintiff's Complaint, there is evidence that Defendants supervised and controlled Plaintiff during her employment and at the time of the accident, subjecting them to FELA liability. *See Williamson*, 926 F.2d at 1350 ("The primary factor to be considered in determining whether a plaintiff was employed by the defendant [under the FELA] is whether the latter had the power to direct, control and supervise the plaintiff in the performance of his work at the time he was injured.") Removal is therefore improper and the case will be remanded.

## IV.   CONCLUSION

For all of these reasons, the case will be remanded.

9

An appropriate Order follows.

10

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVIDA FRITCHMAN | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 08-2559 |
| NORFOLK SOUTHERN RAILWAY CO. | : | |
| and NORFOLK SOUTHERN CORP. | : | |

## ORDER

AND NOW, this  17th  day of March, 2009, upon consideration of Defendants' Notice of Removal (Doc. No. 1) and Plaintiff's Motion in Opposition to Defendants' Notice of Removal (Doc. No. 2), it is ORDERED that this case is REMANDED to the Court of Common Pleas of Philadelphia County.  The Clerk is directed to mark this case as closed.

IT IS SO ORDERED.

BY THE COURT:

_____
R. Barclay Surrick, J.